**Frederick ALTIERI**

**v.**

**LIBERTY MUTUAL INSURANCE COMPANY.**

**No. 95–321–Appeal.**

Supreme Court of Rhode Island.

July 16, 1997.

Stephen G. Linder, For Plaintiff.

Charles N. Redihan, Jr., For Defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

WEISBERGER, Chief Justice.

This case comes before us on appeal by defendant Liberty Mutual Insurance Company (defendant or Liberty) from a judgment of the Superior Court in favor of the plaintiff, Frederick Altieri (plaintiff or Altieri), confirming an arbitrators' award of uninsured-motorist benefits and granting Altieri's motion for summary judgment.[1] We sustain the defendant's appeal, reverse the judgment of the Superior Court, and remand with directions to vacate the arbitrators' award. The facts insofar as pertinent to this appeal are undisputed and are as follows.

On September 14, 1986, Altieri was a passenger in a car owned by the city of Warwick when it collided with a car owned and operated by George Katz (Katz). Altieri was injured in the accident. Subsequently the insurers of the Katz and the city of Warwick vehicles paid Altieri $50,000 and $80,000, re-

---

1. We do not express an opinion on the appropriateness of motions for summary judgment in response to an application to confirm an arbitration award. Such an application generally presents a question of law for the court's determination.

spectively, in settlement of his claims against them. These payments exhausted the limits of the Katz and the city of Warwick insurance policies. The city of Warwick then paid Altieri an additional $45,000.

Thereafter Altieri submitted a claim for uninsured-motorist benefits under his Liberty policy. When Altieri was unable to resolve his claim with Liberty, he requested arbitration under the terms of his policy. Following hearings, an arbitration panel awarded Altieri $221,400, comprising $135,-000 in damages plus $86,400 in interest. The award also stated that Liberty could take credit for any amounts paid to Altieri under the tort-feasors' liability policies. Liberty subsequently refused payment to Altieri under the terms of the award. On May 29, 1992, Altieri filed a petition to confirm the award in the Superior Court for Providence County. On May 18, 1995, the trial justice granted Altieri's petition to confirm the award and his motion for summary judgment. On June 5, 1995, Liberty filed the instant appeal.

On appeal Liberty contends that the trial justice erred in not rendering a declaratory judgment for Liberty on the issue of liability for prejudgment interest. Liberty argues that the trial justice should have overturned the arbitrators' award because either (1) prejudgment interest is not recoverable on damages already paid by the tort-feasors' liability policies or (2) Altieri was not entitled to prejudgment interest from uninsured-motorist benefits since the tort-feasors' aggregated coverages, including the $45,000 paid by the city of Warwick, exceeded Altieri's damages. Altieri argues on the other hand that an arbitration award may include prejudgment interest and that he is entitled to uninsured benefits in the amount of the prejudgment interest remaining after the $175,000 he has already received is subtracted from the total award of $221,400 ($46,400 plus "interest to date").

Our review of the decision of a trial justice is deferential. On appeal we shall not dis-turb the findings of a trial justice sitting without a jury " 'unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence.' " *Prudential Property and Casualty Insurance Co. v. Flynn,* 687 A.2d 440, 442 (R.I.1996). Moreover, judicial authority to vacate an arbitrators' award is limited. *Id.* at 441. This court may vacate an award, however, when it can be shown that the arbitrators' decision was made in manifest disregard of the law. *Id.* at 442; *Westminster Construction Corp. v. PPG Industries, Inc.,* 119 R.I. 205, 210–11, 376 A.2d 708, 711 (1977).

It is well settled in Rhode Island that an arbitration award may include prejudgment interest. *Paola v. Commercial Union Assurance Companies,* 461 A.2d 935, 937 (R.I. 1983); *Westminster Construction Corp.,* 119 R.I. at 211, 376 A.2d at 711. An arbitration award is equivalent in nature and effect to a judgment in an action at law. *Paola,* 461 A.2d at 937. Moreover, our prejudgment-interest statute, G.L.1956 § 9–21–10, requires that interest be added to damages in "any civil action in which a verdict is rendered or a decision made for pecuniary damages." In *Paola* we held that arbitrators should award interest unless the parties agree otherwise. 461 A.2d at 937. In the instant case we do not depart from our prior cases holding that prejudgment interest may be added to arbitration awards.

We are of the opinion that the trial justice erred in confirming the award of prejudgment interest to Altieri to be paid from uninsured-motorist benefits pursuant to the Liberty policy. Under our uninsured-motorist statute in effect at the time of the accident, G.L.1956 § 27–7–2.1(B), as amended by P.L. 1986 ch. 334, § 1 (Supp.1986), a tort-feasor was uninsured only if the limits of the tort-feasors' liability coverage were less than the injured insured's own limits of coverage. *See Bernard v. Rhode Island Insurer's Insolvency Fund,* 651 A.2d 1232, 1233 (R.I.1994).[2]

---

**2.** At the time of the accident at issue in this case, G.L.1956 § 27–7–2.1(B) conditioned eligibility for uninsured benefits on the injured insured having higher coverage *limits* than the tort-fea-sor's coverage limits. *See* P.L.1986, ch. 334, § 1. In 1987 § 27–7–2.1(B) was amended by P.L. 1987, ch. 380, § 1 to afford uninsured motorist benefits to an insured when the tort-feasor's lim-

Prejudgment interest may not be added to damages so as to trigger recovery of uninsured-motorist benefits. *Balian v. Allstate Insurance Co.*, 610 A.2d 546, 550 (R.I.1992). In *Balian* the plaintiff's damages were adjudged to be $85,000 by an arbitration panel and the tort-feasor's liability coverage limit was $100,000. *Id.* at 547. In that case we held that since the tort-feasor's coverage exceeded the plaintiff's damages, the prejudgment interest awarded by the panel could not be "tacked on" to her damage award for purposes of triggering underinsured-motorist recovery pursuant to § 27–7–2.1(B). *Balian*, 610 A.2d at 550.

In the instant case Altieri argues that his adjudged damages, $135,000, did exceed the tort-feasors' available coverage under their liability policies, from which Altieri received $50,000 and $80,000. He contends that the tort-feasors should have been considered uninsured for purposes of recovery under the uninsured-motorist-benefits provisions of his Liberty policy. We do not agree. It is undisputed that Altieri was paid $45,000 by tort-feasor city of Warwick in addition to the amounts paid by the tort-feasors' insurers. We are of the opinion that this payment was part of the tort-feasors' "coverage" for purposes of Altieri's damage claims. Under the rationale of *Fielder v. Amica Mutual Insurance Co.*, 119 R.I. 416, 418, 378 A.2d 1386, 1387 (1977), moneys from any source should be counted, whether from an insurer or an insured. Our decision in this case in no way deviates from our holding in *Flynn.* 687 A.2d 440 (R.I.1996). In that case the issue

was the method of computing interest that had not previously been addressed by a decision of this court in respect to arbitration. In the case at bar our well-established precedents were controlling. The plaintiff Altieri, who had received an amount in excess of full compensation for his injuries, was entitled to no further relief by way of interest or otherwise. Therefore, when the arbitrators determined that Altieri was entitled to $135,000 in compensation for his injuries, that was the total amount he was entitled to recover. Since he received $175,000, the arbitrators were not free to enter an award against his uninsured-motorist carrier. Their decision to do so was in manifest disregard of the law in violation of *Balian* and *Fielder*, which action would require the Superior Court to vacate the award.[3]

For the foregoing reasons the appeal of the defendant is sustained. The judgment of the Superior Court is reversed. The papers may be remanded to the Superior Court with direction to vacate the arbitrators' award.

GOLDBERG, J., did not participate.

BOURCIER, Justice, with whom LEDERBERG, Justice, joins concurring.

I am in agreement with this opinion but do not subscribe to that portion therein that appears to acknowledge that this court's scope of appellate-review authority, like the Superior Court's, is restricted to those factors set out in G.L.1956 §§ 10–3–12 and 10–3–14 or to a "manifest disregard of the law"[4]

---

its are less than the *limits or damages* the injured insured is legally entitled to receive. *See also* P.L.1988, ch. 519, § 1 ("limits or damages"); *but see* P.L.1987, ch. 435, § 1 ("damages").

The cases cited in this opinion have been decided under the "limits or damages" language in effect since 1986. However, for the purposes of this opinion this distinction is of no importance since the dispositive issue is not Altieri's eligibility for uninsured motorists coverage, but whether the award of interest was proper.

3. Our concurring justices suggest that G.L.1956 § 10–3–19 may allow us to review decisions of the Superior Court either confirming, vacating, or modifying an arbitrator's award without complying with the restraints set forth in §§ 10–3–12 and 10–3–14. Justice Flanders and I are of the opinion that § 10–3–19 should be construed together with all other provisions of chapter three

of title ten. Such a construction would require this court to apply the same standards as those which are to be applied by the Superior Court in reviewing an arbitration award.

4. In *Westminster Construction Corp. v. PPG Industries, Inc.*, 119 R.I. 205, 210, 376 A.2d 708, 711 (1977), this court said,

"Although manifest disregard of the law is not included in the statutory enumeration of permissible grounds for upsetting arbitration awards, it has nonetheless crept into the law of arbitration as the result of the Supreme Court's opinion in *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953)."

It would be noted that *Wilko*, the foundation stone for *Westminster Construction Corp.*, was overruled in *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989).

by the arbitrator, all of which pertain to the Superior Court's limited authority when passing upon a motion to vacate, to modify, or to correct an arbitration award. This court's appellate-review authority is not in any manner restricted by the statutory factors that limit judicial review of arbitration proceedings. Those factors apply to and limit only the Superior Court's review of an arbitration proceeding pursuant to chapter 3 of title 10. The General Assembly, when it enacted the arbitration act in question,[5] placed no similar restrictions upon the scope of this court's appellate-review authority. Instead, the General Assembly expressly provided in § 10–3–19 for this court to have unlimited appellate-review authority when reviewing appeals from final judgments entered by the Superior Court in chapter 3 of title 10 arbitration matters. That section (§ 10–3–19) specifically authorizes this court to enter and "make such orders in the premises as the rights of the parties and the ends of justice require."[6]

The specific statutory grant of unfettered appellate-review authority in § 10–3–19 does not in my opinion, require us to indulge in the semantics of discerning between irrational and completely irrational awards, *Romano v. Allstate Insurance Co.*, 458 A.2d 339, 341 (R.I.1983), or between an award made upon error of law as opposed to an award made upon manifest error of law as noted in *Westminster Construction Corp. v. PPG Industries, Inc.*, 119 R.I. 205, 376 A.2d 708 (1977).

The General Assembly, when it enacted the arbitration act in question, vested in this Supreme Court the clear mandate to review final judgments entered by the Superior Court in arbitration proceedings brought pursuant to that act and, after our review, to "make such orders in the premises as the rights of the parties and the ends of justice require." We should recognize that authority and act pursuant to it, giving, of course, any deference to the findings of the arbitra-tor when affirmed and approved by the Superior Court.

I note in the record before us that the trial justice expressed his clear disagreement with several of the arbitrator's factual determinations as well as legal conclusions. He, notwithstanding, reluctantly affirmed the arbitrator's award but only because of the review limitations imposed upon the Superior Court by §§ 10–3–12 and 10–3–14. Consequently, this court need not accord its usual deferential review to the final judgment in question before us and should avail itself of its specific authority pursuant to § 10–3–19 to correct an injustice otherwise unreviewable.

Albeit never before acknowledged in any of our earlier case holdings, § 10–3–19 has always been in the arbitration act, and does not in any manner portend to limit the scope of this court's appellate review to that proscribed upon the Superior Court. Accordingly, although I agree completely with the result reached in today's opinion, I do not believe that it was necessary for this court to reach out and find "manifest disregard of law" in order to overturn the arbitrator's award reflected in the final judgment below. There was more than sufficient error of law contained in the record before us to support our order in the premises so to protect and preserve the rights of the parties and to satisfy the ends of justice pursuant to § 10–3–19.

---

5. Public Laws 1929, ch. 1408.

6. General Laws 1956 § 10–3–19 provides:
   "**Appeal to supreme court.**—Any party aggrieved by any ruling or order made in any court proceeding herein authorized may obtain review as in any civil action, and upon the entry of any final order provided in § 10–3–3, or an order confirming, modifying or vacating an award, he may appeal to the supreme court as provided for appeals in civil actions, and the supreme court shall make such orders in the premises as the rights of the parties and the ends of justice require."