DECISION
These cases are before the Court for decision on oral proof of claim and on defendants' motion to vacate or modify judgments.
Essentially, these four cases arise out of claims by each plaintiff that they, or in the case of plaintiff Bolton, her now deceased husband, had either been injured on duty or had contracted illness in the line of duty as a police officer in the defendant Town. Each plaintiff, following our Supreme Court's Opinion in Chester v. a'Russo, 667 A.2d 519 (RI 1995) brought suit against the Town claiming that while they had been paid benefits pursuant to the provisions of certain special legislation enacted by the General Assembly for the Town of Johnston, it was clear that the collective bargaining agreement between the Town and the union representing the plaintiffs implicated the provisions of General Laws of Rhode Island 1956, 1999 Reenactment Title 45, Chapter 19, Section 1 (and in the case of plaintiff Bolton, Title 45, Chapter 21.3, Section 1). They further contended that the Chester opinion controlled and that each of them were entitled to receive the difference between what they had been paid pursuant to the special legislation hereinbefore referred to, and what the provisions of the General Laws hereinbefore referenced provided.
Ultimately, defendants defaulted for failure to respond to certain discovery requests. Judgments entitled "Final Judgments" were entered by Justice Thompson of this court on June 3, 1999 in the cases brought by plaintiffs Bolton, Ferrante and Webster, and by Justice Savage of this court on July 8, 1999 in the case brought by plaintiff Riccitelli. While tailored to the specific plaintiff as to dates involved and the percentage of salary and benefits used as the measure of damages to be awarded, the final judgments were essentially in the same language save only that the Riccitelli judgment spells out in detail the benefits referred to in the other judgments simply by the use of the word "benefits".
Thereafter, defendants filed, and there was denied by Justice Savage, motions in each case seeking to vacate the final judgments. The final paragraphs in each of the final judgments read as follows:
 "This matter shall be scheduled for proof of claim to determine only the amount of money the Town owes the plaintiff."
Defendants here ask this court to vacate or modify the judgments herein referred to, and/or in the alternative, urge the court to start with the proposition that it is to determine damages only without reference to the language used in the so-called final judgments quoted above. Specifically, this court is asked to interpret 45-19-1 so as in the context of these cases to determine the proper meaning of the following:
 ". . . the salary or wage and benefits to which the police officer . . . would be entitled had he or she not been incapacitated . . ."
Further this court is asked to determine whether, and if so from when, interest in connection with these judgments should run.
 Motion to Vacate or Modify Judgments
The first issue to be taken up by this court is "should this court vacate or modify prior orders entered by other judges of this court and denominated as Final Judgments, and an order of one of those judges declining to vacate any of said Final Judgments.
Essentially, defendants here argue that because of the change in the political administration of the Town, they ought to be permitted to assert new legal grounds, meritorious defenses and public policy considerations which neither were submitted to nor considered by the other justices of this court who, heretofore, have entered the Final Judgments above referred to.
Under the circumstances it seems to this court that defendants, in fact, are the same defendants (the change of political administration is, in fact and in law, of no consequence), and to be successful in connection with this point of their pleadings, they must, of necessity, satisfy the provisions of Rule 60(b) of the Rules of Civil Procedure. This they have failed to do — there is no showing by defendants consistent with the provisions of Rule 60(b)(1)-(6). Defendants simply have failed to carry the burden imposed upon them by said Rule and by the cases interpreting it. Furthermore, the court agrees with plaintiffs that what it here is asked to do is essentially sit as an appellate court with respect to actions taken by my colleagues. First, a judge of this court is not empowered to sit as an appellate court with respect to determinations by other judges of this court, and second, without some demonstrated change in circumstance, not here found, this court is precluded by the doctrine of the law of the case from "second guessing" other judges of this court with respect to legal determinations made by them.
 Proof of Claim
"What are . . . the salary or wage and benefits to which the police officer . . . would be entitled had he or she not been incapacitated?"
The final judgment in Riccitelli spells out in detail the nature of benefits in addition to salary and/or wages contemplated by 45-19-1. They are "longevity, clothing allowances, maintenance allowances and holiday pay." Plaintiffs urge this court to calculate the sums due treating the particular plaintiff as if he were still employed and actively functioning as an officer and applying the various factors set forth in the judgments, subtracting therefrom the amounts heretofore paid pursuant to the special legislation (municipal ordinance).[1]
The parties have stipulated that if plaintiffs are correct, the amount due (exclusive of interest) is as set forth in paragraphs 1(a)-(d) of a stipulation among the parties, a copy of which is annexed hereto and made a part hereof.
On the other hand, defendants urge the court to calculate the sums due by using as the base the salary or wage paid to the particular officer as of the date he retired (as alleged by them), and to apply thereto collective bargaining agreement mandated COLA increases since the date of retirement, plus 50% of longevity and 50% of holiday pay since July 1, 1987, and due to the fact that plaintiffs were not on active duty, without any clothing allowances or maintenance allowances.
It is clear to this court that the determinative factor with respect to the opposing contentions of the parties is the meaning of 45-19-1. It is interesting to note as is stated in the case ofBrissette v. Potter, 560 A.2d 324, 325 (RI 1989) that our Supreme Court has held "the statute is so clear and straightforward that we are unable by construction to import a different meaning into those words." Defendants have cited Palazzo v. DeLuca, CityTreasurer, 694 A.2d 747, 748 (RI 1997) for the proposition that45-19-1 provides for the payment of 100% of salary at the time of retirement of course that case, in fact, does not stand for that proposition, and our court, in its order therein, simply indicated that the plaintiffs were contending for that proposition. It is of interest to note the plaintiff's appeal inPalazzo was denied.
The answer to the question posed is to be found in the language of 45-19-1 which provides that during such incapacity the police officer is entitled to the salary or wage and benefits which he would have been entitled had he or she not been incapacitated. Accordingly, this court finds that plaintiffs' reading of the statute is consistent therewith, and with respect to the determination of the amount of principal, the court finds that the provisions of the aforementioned stipulation in paragraphs 1(a)-(d) are controlling.
 Pre-Judgment Interest
The final dispute among the parties is as to whether or not pre-judgment interest should be awarded in connection with the judgments herein, and if so, from when.
Plaintiffs contend that 9-21-10 of our General Laws, the general interest statute, provides for interest at the rate of 12% per annum from the date the cause of action accrued in all civil actions in which a verdict is rendered or a decision made for pecuniary damages. Plaintiffs further content that essentially the imposition and calculation of interest is a ministerial act to be performed by the clerk of the court.
On the other hand, defendants claim that under the circumstances here, there was no cause of action until the decision in Chester v. a'Russo, which was dated November 30, 1995. Defendants further argue that pronouncements by our Supreme Court in cases such as Clark-Fitzpatrick, Inc./Frankie FoundationCo. v. Gill, 652 A.2d 440, 451 (RI 1994), and Fleet ConstructionCo., Inc. v. North Smithfield, 713 A.2d 1241, 1245, wherein our court stated that pursuant to 9-21-10, pre-judgment interest may be awarded against a municipality on a breach of contract claim where the municipality acts in a proprietary or enterprise capacity are dispositive of this issue. The Court agrees. Here there can be no question that with respect to compensation to police officers under the provisions of 45-19-1, the Town is acting in a governmental, as opposed to enterprise or proprietary, manner.
Accordingly, this court will deny plaintiffs' request for pre-judgment interest. Had the General Assembly intended that interest would be available in cases such as this, it easily could have said so in the applicable statute.
Plaintiffs' counsel is directed, forthwith, to prepare appropriate orders consistent with the provisions hereof. Such orders shall be settled upon notice to counsel for the defendants.
[1] Plaintiff Bolton, the widow of an IOD'd officer, asks to be treated consistent with 45-21.3-1 et seq.
 STIPULATION
This matter came on for hearing before Mr. Justice Silverstein on December 8, 1999, December 17, 1999, January 31, 2000 and February 22, 2000 on the Plaintiffs' motion for oral proof of claim, Defendant's opposition thereto and Defendant's motion to vacate or modify the Judgments entered by Ms. Justice Thompson and Ms. Justice Savage. In consideration of dispensing with the testimony of the parties' expert witnesses concerning the appropriate elements and calculation of damages due and owing the Plaintiffs pursuant to their oral proof of claim, the parties hereby submit the following stipulation:
1. If this Court adopts all of the theories and calculations advanced by Plaintiffs as set forth in their papers filed with this Court, and further assuming that this Court does not vacate or modify any portion of the Judgments heretofore entered, then the Defendant Town of Johnston agrees:
a. The calculation of damages due Plaintiff, Stephen J. Riccitelli, exclusive of interest, but representing the difference between frill salary and benefits as if presently employed and never retired, and what he actually received from the Defendant from March 2, 1981, including longevity, uniform and maintenance allowances and holiday pay, totals $513,579.
b. The calculation of damages due Plaintiff, Ruth V. Bolton, widow of Russell Bolton, exclusive of interest, but representing the difference between full salary and benefits as if her husband was employed to the date of his death and never retired, and what he or his wife had actually received from the Defendant from January 30, 1970, including longevity, uniform and maintenance allowances and holiday pay, totals $461,074.
c. The calculation of damages due Plaintiff, Vincent J. Ferrante, Sr., exclusive of interest, but representing the difference between fill salary and benefits as if presently employed and never retired, and what he had actually received from the Defendant from July 1, 1983, including longevity, uniform and maintenance allowances and holiday pay, totals $420,303.
d. The calculation of damages due Plaintiff; Earl H. Webster, exclusive of interest, but representing the difference between full salary and benefits as if presently employed and never retired, and what he had actually received from the Defendant from April 26, 1977, including longevity, uniform maintenance allowances and holiday pay, totals $561,836.
2. If this Court adopts all of the theories and calculations advanced by the Defendant, as set forth in its papers with this Court, and further assuming that this Court does not vacate in their entirety the Judgments heretofore entered, then the Plaintiffs agree:
a. The calculation of damages due Plaintiff, Stephen J. Riccitelli, exclusive of interest, but representing the difference between 100% of the salary at the time of Plaintiff's retirement, plus 50% of the COLA (cost of living) increase in wages accorded active members per collective bargaining agreements) since the date of his retirement, plus 50% of the longevity rate in effect on 7/1/87 for his years of service, plus 50% of holiday pay at the rate of pay in effect on 7/1/87, and what he actually received from the Defendant from March 2, 1981, totals $223,452.
b. The calculation of damages due Plaintiff Ruth V. Bolton, widow of Russell Bolton, exclusive of interest, but representing the difference between 100% of the salary at the time of her husband's retirement, plus 50% of the COLA (cost of living) increase in wages accorded active members (per collective bargaining agreements) since the date of her husband's retirement, plus 50% of the longevity rate in effect on 7/1/87 for his years of service, plus 50% of holiday pay at the rate of pay in effect on 7/1/87, and what he or she had actually received from the Defendant from January 30, 1970 and reduced to 67% from the date of Russell Bolton's death pursuant to the widow's benefit, totals $150,231.
c. The calculation of damages due Plaintiff, Vincent J. Ferrante, exclusive of interest, but representing the difference between 100% of the salary at the time of Plaintiff's retirement, plus 50% of the COLA (cost of living) increase in wages accorded active members (per collective bargaining agreements) since the date of his retirement, plus 50% of the longevity rate in effect on 7/1/87 for his years of service, plus 50% of holiday pay at the rate of pay in effect on 7/1/87, and what he actually received from the Defendant from July 1, 1983, totals $211,195.
d. The calculation of damages due Plaintiff, Earl H. Webster, exclusive of interest, but representing the difference between 100% of the salary at the time of Plaintiff's retirement, plus 50% of the COLA (cost of living) increase in wages accorded active members (per collective bargaining agreements) since the date of his retirement, plus 50% of the longevity rare in effect on 7/1/87 for his years of service, plus 50% of holiday pay at the rate of pay in effect on 7/1/87, and what he actually received from the Defendant from April 26, 1977, totals $214,371.
3. Although the parties agree that the figures contained within the expert reports are accurately calculated, the Defendant does not stipulate that Plaintiffs are entitled to the amounts set forth in Plaintiffs' reports. Conversely, the Plaintiffs do not stipulate that they are limited to the amount of damages set forth in Defendant's reports. Further, assuming the Court finds that Plaintiffs are entitled to longevity payments, Defendant does not stipulate that Plaintiffs are entitled to continuous escalation of longevity at the rates outlined in Plaintiffs' reports as if Plaintiffs are still actively employed with the Johnston Police Department, which longevity allowances would even exceed those provided as the maximum allowance per collective bargaining agreements.
4. By this stipulation, the Defendant does not waive its argument that prejudgment interest has no application to an award by this Court, or any of its other arguments concerning the application of prejudgment interest as set forth in its memoranda of law filed with this Court.